UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PHYLLIS FRACCOLA, ALAN
FRACCOLA, ASVG ASSOCIATES, LLC,
HYDRANIA, INC., and RICK'S SALON
AMERIQUE, LTD.,

                              Plaintiffs,

    -against-                                  1:08-CV-1001 (LEK/RFT)

CITY OF TROY, NEW YORK, HARRY J.
TUTUNJIAN, Mayor of Troy, and KEVIN
MOONEY, Assistant Code Inspector,

                              Defendants.
_____

## MEMORANDUM-DECISION AND ORDER

Plaintiffs commenced this action on September 22, 2008, asserting constitutional claims as well as a claim of promissory estoppel, after Defendants closed Plaintiffs' businesses for a year pursuant to the City of Troy, New York's Nuisance Ordinance ("Nuisance Ordinance").[1]  See generally Complaint (Dkt. No. 1).  Presently before this Court is Plaintiffs' Motion for a preliminary injunction, as Plaintiffs seek to enjoin Defendants from enforcing the provisions of the Nuisance Ordinance against Plaintiffs.  Motion (Dkt. No. 6).  For the reasons set forth below, Plaintiffs' Motion is denied.

**I.**    **BACKGROUND**

Plaintiff Phyllis Fraccola owns the real property located at 12, 14, 16, and 18 King Street in Troy, New York ("Troy" or the "City").  Affidavit of Plaintiff Alan Fraccola ("Alan Fraccola Aff.")

---

[1] Troy General Code Chapter 205.

¶ 3 (Dkt. No. 6, Attach. 2).  Two businesses operate from the premises in question: "Fantasies,"[2] an adult entertainment establishment, and "Troy Video and News," an adult retail store.  Id. ¶¶ 7, 9.[3] Fantasies operates within 16 and 18 King Street, while Troy Video and News operates at 12 King Street.  Id. ¶¶ 12-13.  The building located at 14 King Street is a part of both Troy Video and News and Fantasies.  Id. ¶ 14.  The first floor of 14 King Street includes video arcade booths for Troy Video and News, while the second floor includes private rooms and bathrooms associated with Fantasies.  Id. ¶¶ 15-16.

On February 1, 2008, Troy's Bureau of Code Enforcement inspected the property located at 14 King Street and placed padlocks upon the properties located at 12, 14, 16 and 18 King Street. Compl. ¶¶ 22-23.  The City placed upon the front of 14 King Street a notice which stated that the building was in violation of Troy's Code of Ordinances and that the building must be vacated immediately.  Alan Fraccola Aff. ¶ 19 and Ex. A.  Plaintiffs allege that the City failed to notify or serve the owner or the tenants of 12, 14, 16 and 18 King Street as to any charges or actions that were pending.  Compl. ¶ 26.  On February 5, 2008, Plaintiffs' attorney, David Brickman ("Plaintiffs' counsel") sent correspondence to David B. Mitchell, Corporation Counsel for the City of Troy ("Defense counsel"), asking for notice of such charges.  Affirmation of David Brickman ("Brickman Affirm.") ¶ 2 (Dkt. No. 6, Attach. 5) and Ex. 1.  On February 12, 2008, Defense counsel responded

---

[2] Fantasies replaced a business known as "Cloud 9," also an adult entertainment establishment.  Alan Fraccola Aff. ¶ 9.  Plaintiff corporation Rick's Salon Amerique, Ltd. was the owner of Cloud 9.  Id. ¶ 5.

[3] Plaintiff Phyllis Fraccola is the sole shareholder and officer of Plaintiff corporation Hydrania, Inc., the owner of Troy Video and News.  Alan Fraccola Aff. ¶ 4.  Plaintiff Alan Fraccola is a shareholder of Plaintiff corporations Rick's Salon Amerique, Ltd., and ASVG Associates, LLC, the owner of Fantasies.  Id. ¶¶ 2, 6.

by letter, stating that he was enclosing "a copy of the charges against the property located at #12, #14, #16 & #18 King Street." Brickman Affirm. ¶ 3 and Ex. 2. The accompanying Notice of Violations, issued by the City's Bureau of Code Enforcement, listed the property location as "14 King St." and included over 140 violations allegedly stemming from an inspection conducted on February 1, 2008 by Defendant Kevin Mooney, Assistant Code Inspector for the City. Brickman Affirm., Ex. 2. These violations included various alleged deficiencies in the safety and sanitation of the building. Id.

On February 11, 2008, Plaintiffs commenced a proceeding in the Rensselaer County Supreme Court by Order to Show Cause, pursuant to Article 78 of the Civil Practice Laws and Rules, challenging the padlocking of the buildings. Brickman Affirm. ¶ 6 and Ex. 3. On February 12, 2008, another attorney with the City's Corporation Counsel's Office sent Plaintiffs a letter entitled "Notice of Charges and Opportunity for Hearing" ("Notice of Charges"), notifying them of charges against 14 King Street under the Nuisance Ordinance. Brickman Affirm. ¶ 7 and Ex. 4. The Notice of Charges listed five alleged nuisance incidents at 14 King Street over the previous six months, including one incident of prostitution and two incidents of public lewdness, and set a hearing date for March 28, 2009. Brickman Affirm., Ex. 4. The Notice of Charges stated that the Plaintiffs' "failure to appear will result in a default judgment and the imposition of a penalty pursuant to Section 205-2 of the Troy City Code," including the closing of the building and/or the suspension or revocation of the certificate of use and occupational license or permit for the businesses. Brickman Affirm., Ex. 4. ¶ 6. Plaintiffs' counsel states that after his negotiations with Defense counsel and the removal of the padlocks on the building, the Plaintiffs withdrew the Article 78 proceeding on or around February 22, 2008. Brickman Affirm. ¶ 9 and Ex. 5.

In March 2008, Plaintiffs' counsel corresponded with Defense counsel by letter on multiple occasions regarding the Notice of Charges and the possibility that Plaintiffs could meet with members of the Troy Police Department to discuss the incidents that led to the nuisance charges. See Brickman Affirm. ¶¶ 10-12 and Ex. 6-8.  Plaintiffs' counsel states that he discussed this meeting with Defense counsel, and that this meeting between Plaintiffs and the police was meant to avoid further prosecution of the nuisance charges, thereby mooting the necessity of the scheduled hearing.  Brickman Affirm. ¶¶ 12-13 and Ex. 8.

The hearing on the nuisance charges was held on March 28, 2008 without the appearance of Plaintiffs or their counsel.  Brickman Affirm. ¶ 14 and Ex. 9.  Plaintiffs' counsel states that he contacted Defense counsel immediately upon being informed that the hearing had been held, and that Defense counsel assured him that the hearing was unimportant and that the prior resolution between the parties remained in effect.  Brickman Affirm. ¶¶ 17-18.  On April 2, 2008, the hearing officer issued a decision recommending "revocation of the certificate of use for the subject premises for a period of one year."  Hearing Officer Decision at 5 (Brickman Affirm., Ex. 9).  The hearing officer "further recommended that the City prohibit the owner or operator or other person or entity affiliated with 14 King Street, from obtaining a new certificate of use for 14 King Street, Troy, New York, or any other location with the City of Troy during the period of such revocation."  Id.

On September 12, 2008, Defendant Harry J. Tutunjian, the City's Mayor (the "Mayor"), signed an Order of Closure "directing that the property located [at] 14 King Street, Troy New York, along with all business, trade activities and uses be CLOSED for a period of ONE-YEAR EFFECTIVE IMMEDIATELY and that the premises identified in this Order may re-open effective September 12, 2009, provided all required permits, licenses and approvals are in place."  Brickman

4

Affirm. ¶ 19 and Ex. 9.  On September 12, 2008, padlocks were again placed on the buildings located at 12, 14, 16, and 18 King Street.  Compl. ¶ 49.

Plaintiffs filed their Complaint on September 22, 2008, alleging that the Defendants "engaged in a scheme to close Plaintiffs' businesses and prevent them from operating without notice or an opportunity to be heard[,]" thereby violating Plaintiffs' procedural due process rights.  Compl. ¶¶ 50-59.  Plaintiffs also allege that Defendants' actions and the City's statutory scheme upon which those actions were based violated Plaintiffs' First Amendment rights by unlawfully interfering with Plaintiffs' ability to engage in constitutionally protected speech and by creating a prior restraint and chilling effect on that speech.  Id. ¶¶ 60-65.  Plaintiffs further assert a claim for promissory estoppel, alleging that attorneys with the City's Corporation Counsel's Office made representations to Plaintiffs' counsel that the charges against Plaintiffs would be deferred or ceased based upon negotiations and settlement agreements.  Id. ¶ 67.  Plaintiffs claim that they reasonably relied upon such promises, but that the City failed to fulfill its promises.  Id. ¶¶ 68-70.  On September 22, 2008–the same day Plaintiffs filed their Complaint–Plaintiffs also filed the pending Motion for a preliminary injunction.  Dkt. No. 6.

**II.    STANDARD OF REVIEW**

It is well settled that in order for a court to grant a motion for a preliminary injunction, the party seeking such relief must show: "(1) a likelihood of irreparable harm in the absence of the injunction; and (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the movant's favor."  Doninger v. Niehoff, 527 F.3d 41, 47 (2d Cir. 2008) (citation omitted).  "Irreparable harm 'means injury for which a monetary award cannot be adequate

compensation.'" Jayaraj v. Scappini, 66 F.3d 36, 39 (2d Cir. 1995) (quoting Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979)). Moreover, to establish irreparable harm, plaintiffs "must demonstrate that absent a preliminary injunction they will suffer 'an injury that is neither remote nor speculative, but actual and imminent,' and one that cannot be remedied 'if a court waits until the end of trial to resolve the harm.'" Freedom Holdings, Inc. v. Spitzer, 408 F.3d 112, 114 (2d Cir. 2005) (quoting Rodriguez v. DeBuono, 175 F.3d 227, 234-35 (2d Cir. 1999)).

When the party seeking preliminary injunctive relief challenges a "'government action taken in the public interest pursuant to a statutory or regulatory scheme,'" the moving party cannot resort to the "fair ground for litigation" standard, but is required to demonstrate irreparable harm and a likelihood of success on the merits. Able v. United States, 44 F.3d 128, 131 (2d Cir. 1995) (per curiam) (quoting Plaza Health Labs., Inc. v. Perales, 878 F.2d 577, 580 (2d Cir. 1989)). Moreover, "[w]hen the movant seeks a 'mandatory' injunction–that is . . . an injunction that will alter rather than maintain the status quo–she must meet the more rigorous standard of demonstrating a 'clear' or 'substantial' likelihood of success on the merits." Doninger, 527 F.3d at 47 (citation omitted). "[A]bsent a clear showing that the movant has met its burden of proof," a motion for a preliminary injunction will be denied. Fisher v. Goord, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (internal quotations omitted).

Here, Plaintiffs are challenging a governmental action taken pursuant to a regulatory scheme intended to abate public nuisances, and are seeking a mandatory injunction. Accordingly, Plaintiffs' burden is especially rigorous– in addition to establishing irreparable harm, they must demonstrate a clear or substantial likelihood of success on the merits. They have failed to meet this burden, as explained below.

**III.    DISCUSSION**

    **A.    Irreparable Harm**

Plaintiffs argue that their allegations of constitutional deprivations are sufficient to establish irreparable harm, and that monetary damages could not adequately redress those deprivations were they to succeed on the merits. Generally, irreparable injury may be presumed where a plaintiff alleges the violation of constitution rights. Jolly v. Coughlin, 76 F.3d 468, 482 (2d Cir. 1996) (citations omitted). Plaintiffs allege violations of their First Amendment rights as well as their procedural due process rights. When a plaintiff alleges a deprivation of First Amendment rights "from a rule or regulation that may only potentially affect speech," such as the Nuisance Ordinance at issue here, "the plaintiff must establish a causal link between the injunction sought and the alleged injury, that is, the plaintiff must demonstrate that the injunction will prevent the feared deprivation of free speech rights." Bronx Household of Faith v. Bd. of Educ. of City of New York, 331 F.3d 342, 349-50 (2d Cir. 2003). The Court will assume without deciding that Plaintiffs have met their burden of showing irreparable harm, because even assuming that they have established this element, they have failed to demonstrate a likelihood of success on the merits.

    **B.    Merits**

    **a.    Procedural Due Process**

It is well established that the government may not deprive a person "of life, liberty, or property without reasonable notice and an opportunity to be heard." Karpova v. Snow, 497 F.3d 262, 270 (2d Cir. 2007) (citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)). Such notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their

objections." Mullane, 339 U.S. at 314 (citations omitted). "The notice must be of such nature as reasonably to convey the required information . . . and it must afford a reasonable time for those interested to make their appearance." Id. (citations omitted).

Plaintiffs argue that the City's procedures for providing notice to property owners of violations of the Nuisance Ordinance are unconstitutional as applied to Plaintiffs. The Nuisance Ordinance provides that "Notice shall be served upon an owner pursuant to Article 3 of the Civil Practice Law and Rules, upon a lessor or lessee pursuant to § 735 of the Real Property Actions and Proceedings Law, and upon a mortgagee by means of certified mail, return receipt requested . . . ." Troy General Code § 205-22(B). Plaintiffs argue this the posting of notice on 14 King Street was constitutionally inadequate because the Notice did not mention 12, 16, or 18 King Street, even though those properties had also been padlocked by both the Bureau of Code Enforcement and later by the Mayor under the Nuisance Ordinance. Plaintiffs further argue that they never received notice in the mail until they requested such notice from Defense counsel.

Plaintiffs have failed to demonstrate a likelihood of success on the merits of their procedural due process claim. The record shows that 12, 14, 16 and 18 King Street are connected buildings, and that both Troy Video and News and Fantasies operated in part out of 14 King Street. Alan Fraccola Aff. ¶¶ 14-16. 14 King Street was given a combined certificate of occupancy covering the businesses located at these premises. Declaration of Nannette R. Kelleher, Ex. A (Dkt. No. 13, Attach. 2). Thus, Plaintiffs have failed to show that the notice was constitutionally insufficient due to the posted notice's reference to only 14 King Street. Moreover, in the hearing officer's written decision, he found that Plaintiffs had been served with the Notice of Charges both personally and by

8

mail, Hearing Officer Decision at 1, and Plaintiffs offer no evidence to support their conclusory allegations to the contrary.

### b.     First Amendment

Plaintiffs also allege that the City closed their businesses as a pretext for the suppression of Plaintiffs' constitutionally protected expression. Again, however, Plaintiffs fail to show a clear likelihood of success on the merits as to this claim. The instant case raises similar facts to those presented in Arcara v. Cloud Books, Inc., 478 U.S. 697 (1986). In Arcara, authorities in Erie County, New York sought to close an adult bookstore as a public nuisance because an undercover investigation revealed that prostitution and other illegal activities were occurring on the premises. 478 U.S. at 698-99. The store's owners challenged the closure, contending, *inter alia*, that the closure would interfere with their First Amendment right to sell books on the premises. Id. at 700. The Supreme Court concluded that on the facts presented, the closure order need not be subjected to a First Amendment analysis:

> [W]e have not traditionally subjected every criminal and civil sanction imposed through legal process to "least restrictive means" scrutiny simply because each particular remedy will have some effect on the First Amendment activities of those subject to sanction. Rather, we have subjected such restrictions to scrutiny only where it was conduct with a significant expressive element that drew the legal remedy in the first place . . . , or where a statute based on a nonexpressive activity has the inevitable effect of singling out those engaged in expressive activity . . . This case involves neither situation, and we conclude the First Amendment is not implicated by the enforcement of a public health regulation of general application against the physical premises in which respondents happen to sell books.

Arcara, 478 U.S. at 706-07 (internal citations omitted).

Plaintiffs have failed to make a sufficient showing of how the instant case is distinguishable from Arcara. Nor do Plaintiffs' conclusory allegations that Defendants applied the Nuisance Ordinance as a pretext to chill Plaintiffs' First Amendment rights suffice to warrant injunctive relief.

### c. Promissory Estoppel

In order to state a claim for promissory estoppel in New York, a plaintiff must show (1) "a clear and unambiguous promise; (2) a reasonable and foreseeable reliance by the parties to whom the promise is made; (3) and an injury sustained by the party asserting the estoppel by reason of the reliance." Darby Trading Inc. v. Shell Intern. Trading and Shipping Co. Ltd., 568 F. Supp. 2d 329, 341 (S.D.N.Y. 2008).

Plaintiffs have also failed to demonstrate a likelihood that they will succeed on the merits of their promissory estoppel claim. Plaintiffs have not shown that a clear and unambiguous promise was made, or that any reliance on such an alleged promise would have been reasonable when they chose not to appear at the hearing. Plaintiffs' counsel claims that he negotiated terms for resolving the nuisance charges with Defense counsel, and that Defense counsel assured him that the scheduled hearing was thereby rendered moot. Brickman Affirm. ¶¶ 9-13. However, the only evidence Plaintiffs put forth to support this contention is correspondence sent by Plaintiffs' counsel to Defense counsel which fails to show that Defendants made a clear promise to defer the nuisance charges. For example, Plaintiffs' counsel sent a letter to Defense counsel on March 8, 2008 "recommend[ing] as a resolution that [his] client meet with a member of the Troy Police Department to discuss the incidents and to receive advice and training from the Department as to how to keep the premises law abiding and crime free in the future." Brickman Affirm., Ex. 6 (Dkt. 6, Attach. 11). On March 25, 2008, Plaintiffs' counsel sent a letter to Defense counsel stating that "[a]s we discussed my client has met with the Troy Police Department . . . I would propose that nuisance charges be deferred based upon my client's participation and continued cooperation with the local authorities." Brickman Affirm., Ex. 8 (Dkt. 6, Attach. 13). These letters, in which

Plaintiffs' counsel "recommend[ed]" and "propose[d]" ways to resolve the nuisance charges, do not establish that Defendants clearly and unambiguously agreed to a resolution of the nuisance charges that would render Plaintiffs' appearance at the hearing unnecessary. Nor do these letters establish that any reliance on such alleged promises would be reasonable.

As Plaintiffs' submissions do not establish a substantial likelihood that they will succeed on the merits as to any of their claims, their Motion for a preliminary injunction is denied.[4]

## VI. CONCLUSION

Based on the foregoing discussion, it is hereby

**ORDERED,** that Plaintiffs' Motion for a preliminary injunction (Dkt. No. 6) is **DENIED**; and it is further

**ORDERED,** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties.

**IT IS SO ORDERED**.

DATED:  July 21, 2009
        Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge

---

[4] Of course, the Court's determination that, for purposes of the pending Motion, Plaintiffs have failed to show a clear likelihood of success on the merits does not prevent Plaintiffs from ultimately prevailing on the merits, at trial or otherwise.