UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PHYLLIS FRACCOLA, ALAN
FRACCOLA, ASVG ASSOCIATES,
LLC, HYDRANIA, INC., and RICK'S
SALON AMERIQUE, LTD,

                               Plaintiffs,

       v.                                          1:08-CV-01001 (LEK/DRH)

CITY OF TROY, NEW YORK, HARRY
TUTUNJIAN, *Mayor of Troy*, KEVIN
MOONEY, *Assistant Code Inspector*,

                               Defendants.
_____

**MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

       Plaintiffs commenced this action on September 22, 2008, asserting constitutional claims, pursuant to 42 U.S.C. § 1983, under the First, Fifth and Fourteenth Amendments as well as a claim of promissory estoppel under state law, after Defendants closed Plaintiffs' businesses pursuant to the City of Troy, New York's Nuisance Ordinance ("Nuisance Ordinance").[1]  See generally Complaint (Dkt. No. 1).  Presently before this Court is Defendants' Motion for summary judgment (Dkt. No. 24); Plaintiffs have notified this Court that they do not oppose this Motion (Dkt. No. 25).

---

[1]Troy General Code Chapter 205.

## II.   BACKGROUND

Plaintiff Phyllis Fraccola owns the real property located at 12, 14, 16, and 18 King Street in Troy, New York ("Troy" or the "City").  Affidavit of Plaintiff Alan Fraccola ("Alan Fraccola Aff.") ¶ 3 (Dkt. No. 6, Attach. 2). Two businesses operate from the premises in question: "Fantasies,"[2] an adult entertainment establishment, and "Troy Video and News," an adult retail store.  Id. ¶¶ 7, 9.[3] Fantasies operates within 16 and 18 King Street, while Troy Video and News operates at 12 King Street.  Id. ¶¶ 12-13.  The building located at 14 King Street is a part of both Troy Video and News and Fantasies.  Id. ¶ 14.  The first floor of 14 King Street includes video arcade booths for Troy Video and News, while the second floor includes private rooms and bathrooms associated with Fantasies.  Id. ¶¶ 15-16.

On February 1, 2008, Troy's Bureau of Code Enforcement inspected the property located at 14 King Street and proceeded to place padlocks upon the properties located at 12, 14, 16 and 18 King Street.  Compl. ¶¶ 22-23.  The City placed upon the front of 14 King Street a notice which stated that the building was in violation of Troy's Code of Ordinances and that the building must be vacated immediately.  Alan Fraccola Aff. ¶ 19 and Ex. A.  Plaintiffs allege that the City failed to notify or serve the owner or the tenants of 12, 14, 16 and 18 King Street as to any charges or actions that were pending.  Compl. ¶ 26.  On February 5, 2008, Plaintiffs' attorney, David Brickman

---

[2] Fantasies replaced a business known as "Cloud 9," also an adult entertainment establishment.  Alan Fraccola Aff. ¶ 9.  Plaintiff corporation Rick's Salon Amerique, Ltd. was the owner of Cloud 9.  Id. ¶ 5.

[3] Plaintiff Phyllis Fraccola is the sole shareholder and officer of Plaintiff corporation Hydrania, Inc., the owner of Troy Video and News.  Alan Fraccola Aff. ¶ 4.  Plaintiff Alan Fraccola is a shareholder of Plaintiff corporations Rick's Salon Amerique, Ltd., and ASVG Associates, LLC, the owner of Fantasies.  Id. ¶¶ 2, 6.

("Plaintiffs' counsel") sent correspondence to David B. Mitchell, Corporation Counsel for the City of Troy ("Defense counsel"), asking for notice of such charges. Affirmation of David Brickman ("Brickman Affirm.") ¶ 2 (Dkt. No. 6, Attach. 5) and Ex. 1. On February 12, 2008, Defense counsel responded by letter, stating that he was enclosing "a copy of the charges against the property located at #12, #14, #16 & #18 King Street." Brickman Affirm. ¶ 3 and Ex. 2. The accompanying Notice of Violations, issued by the City's Bureau of Code Enforcement, listed the property location as "14 King St." and included over 140 violations allegedly stemming from an inspection conducted on February 1, 2008 by Defendant Kevin Mooney, Assistant Code Inspector for the City. Brickman Affirm., Ex. 2. These violations included various alleged deficiencies in the safety and sanitation of the building. Id.

On February 11, 2008, Plaintiffs commenced a proceeding in the Rensselaer County Supreme Court by Order to Show Cause, pursuant to Article 78 of the Civil Practice Laws and Rules, challenging the padlocking of the buildings. Brickman Affirm. ¶ 6 and Ex. 3. On February 12, 2008, another attorney with the City's Corporation Counsel's Office sent Plaintiffs a letter entitled "Notice of Charges and Opportunity for Hearing" ("Notice of Charges"), notifying them of charges against 14 King Street under the Nuisance Ordinance. Brickman Affirm. ¶ 7 and Ex. 4. The Notice of Charges listed five alleged nuisance incidents at 14 King Street over the previous six months, including one incident of prostitution and two incidents of public lewdness, and set a hearing date for March 28, 2009. Brickman Affirm., Ex. 4. The Notice of Charges stated that the Plaintiffs' "failure to appear will result in a default judgment and the imposition of a penalty pursuant to Section 205-2 of the Troy City Code," including the closing of the building and/or the suspension or revocation of the certificate of use and occupational license or permit for the

3

businesses. Brickman Affirm., Ex. 4. ¶ 6. Plaintiffs' counsel states that after his negotiations with Defense counsel and the removal of the padlocks on the building, the Plaintiffs withdrew the Article 78 proceeding on or around February 22, 2008. Brickman Affirm. ¶ 9 and Ex. 5.

In March 2008, Plaintiffs' counsel corresponded with Defense counsel by letter on multiple occasions regarding the Notice of Charges and the possibility that Plaintiffs could meet with members of the Troy Police Department to discuss the incidents that led to the nuisance charges. See Brickman Affirm. ¶¶ 10-12 and Ex. 6-8. Plaintiffs' counsel states that he discussed this meeting with Defense counsel, and that this meeting between Plaintiffs and the police was meant to avoid further prosecution of the nuisance charges, thereby mooting the necessity of the scheduled hearing. Brickman Affirm. ¶¶ 12-13 and Ex. 8. While none of the Brickman's letters indicate that counsel for the City agreed to such a resolution, Plaintiffs' Complaint nonetheless asserts that the counsel "did not object to the language in th[e] letter" proposing that charges be deferred, and that "[i]t was understood by Plaintiffs and Plaintiffs' counsel that this resolution was meant to avoid further prosecution . . . ." Compl. ¶¶ 40-43.

The hearing on the nuisance charges was held on March 28, 2008 without the appearance of Plaintiffs or their counsel. Brickman Affirm. ¶ 14 and Ex. 9. Plaintiffs' counsel states that he contacted Defense counsel immediately upon being informed that the hearing had been held, and that Defense counsel assured him that the hearing "was unimportant and that the prior resolution between the parties remained in effect." Brickman Affirm. ¶¶ 17-18. On April 2, 2008, the hearing officer issued a decision recommending "revocation of the certificate of use for the subject premises for a period of one year." Hearing Officer Decision at 5 (Brickman Affirm., Ex. 9). The hearing officer "further recommended that the City prohibit the owner or operator or other person or entity

4

affiliated with 14 King Street, from obtaining a new certificate of use for 14 King Street, Troy, New York, or any other location with the City of Troy during the period of such revocation." Id.

On September 12, 2008, Defendant Harry J. Tutunjian, the City's Mayor (the "Mayor"), signed an Order of Closure "directing that the property located [at] 14 King Street, Troy New York, along with all business, trade activities and uses be CLOSED for a period of ONE-YEAR EFFECTIVE IMMEDIATELY and that the premises identified in this Order may re-open effective September 12, 2009, provided all required permits, licenses and approvals are in place." Brickman Affirm. ¶ 19 and Ex. 9. On September 12, 2008, padlocks were again placed on the buildings located at 12, 14, 16, and 18 King Street. Compl. ¶ 49.

Plaintiffs filed their Complaint on September 22, 2008, alleging that the Defendants "engaged in a scheme to close Plaintiffs' businesses and prevent them from operating without notice or an opportunity to be heard[,]" thereby violating Plaintiffs' procedural due process rights, guaranteed by the Fifth and Fourteenth Amendments. Compl. ¶¶ 50-59. Plaintiffs also allege that Defendants' actions and the City's statutory scheme upon which those actions were based violated Plaintiffs' First Amendment rights by unlawfully interfering with Plaintiffs' ability to engage in constitutionally protected speech and by creating a prior restraint and chilling effect on that speech. Id. ¶¶ 60-65. Plaintiffs further assert a claim for promissory estoppel, alleging that attorneys with the City's Corporation Counsel's Office made representations to Plaintiffs' counsel that the charges against Plaintiffs would be deferred or ceased altogether based upon negotiations and settlement agreements. Id. ¶ 67. Plaintiffs claim that they reasonably relied upon such promises, but that the City failed to fulfill its promises. Id. ¶¶ 68-70. On September 22, 2008 – the same day Plaintiffs filed their Complaint – Plaintiffs also moved for a preliminary injunction. Dkt. No. 6. In a

Memorandum-Decision and Order of this Court dated July 21, 2009, Plaintiffs' Motion was denied, as the Court found that Plaintiffs had failed to establish a substantial likelihood that they would succeed on the merits as to any of their claims.

### III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); Beard v. Banks, 548 U.S. 521, 529 (2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). A court must "'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing the judgment.'" Brown v. Henderson, 257 F.2d 246, 251 (2d Cir. 2001) (quoting Cifra v. General Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

If the moving party meets its initial burden of demonstrating that no genuine issue of material fact exists for trial, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Corp., 475 U.S. 574, 586 (1986) (citations omitted). The non-movant "must come forth with evidence sufficient to allow a reasonable jury to find in her favor." Brown, 257 F.3d at 251 (citation omitted). The nonmoving party "may not rely merely on allegations or denials in its own pleadings;" bald assertions unsupported by evidence are insufficient to overcome a motion for summary judgment.

FED. R. CIV. P. 56(e)(2); see Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991); Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990).

Rule 56(e)2 further provides that: "If the opposing party does not [] respond, summary judgment should, if appropriate, be entered against that party." While the non-moving party's burden to respond arises only if a summary judgment motion is "appropriate," meaning the moving party has met its burden of production to show the absence of a genuine issue concerning any material fact, a court will proceed, if there is no opposition by the non-movant, to grant summary judgment if the moving party has met its initial burden. Put another way, "even when a nonmoving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001). "[I]n determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion." Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co., 373 F.3d 241, 244 (2d Cir. 2007) (citing Giannullo v. City of New York, 322 F.3d 139, 143 n.5 (2d Cir. 2003).

### IV.   DISCUSSION

*a. First and Second Claims*

Plaintiffs' First and Second Claims allege that Defendants committed violations of Plaintiffs' procedural due process rights involving the application of the City's Bureau of Code

Enforcement process and the Troy Nuisance Ordinance. With each claim, Plaintiffs contend that they were deprived of constitutionally sufficient notice and an opportunity to be heard concerning treatment of their King Street properties. Defendants have met their initial burden of demonstrating that no genuine issue of material fact exists for trial; Plaintiffs, in turn, have not proffered any evidence or otherwise made any showing that undermines this demonstration. Accordingly, their claims fail, and the Court grants summary judgment in favor of the movants on Plaintiffs' due process claims.

It is well established that the government may not deprive a person "of life, liberty, or property without reasonable notice and an opportunity to be heard." Karpova v. Snow, 497 F.3d 262, 270 (2d Cir. 2007). The legal framework for analyzing a procedural due process claim broadly proceeds in two steps: First, there must be found a constitutionally protected interest at issue. Then, upon such a finding, a court considers whether the government deprived the plaintiff of that interest without due process. Narumanchi v. Board of Trustees, 850 F.2d 70, 72 (2d Cir. 1988). "The second step of the analysis thus asks what process was due to the plaintiff, and inquires whether that constitutional minimum was provided in the case under review." Id.

In Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950), the Supreme Court articulated the principle that "an elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." The Court defined reasonably calculated notice as that which is performed by means "such as one desirous of actually informing the [property owner] might reasonably adopt to accomplish it." Id. at 315; see also Akey v. Clinton County, 375 F.3d

231, 235 (2d Cir. 2004) (explaining how a property owner must be given notice of foreclosure proceedings before foreclosure can occur, and that in wide range of proceedings threatening property interests, the Supreme Court has held that mailed notice satisfies the requirements of due process).  The Second Circuit, in view of subsequent Supreme Court decisions, has stated that "where a State or municipality knows that the person's condition or location is such that he will not be adequately apprised of the proceeding in question through the statutory method of notice used, the due process clause will not have been complied with."  United States v. Braunig, 553 F.2d 777, 780 (2d Cir. 1988).

As presented in their First and Second Claims, Plaintiffs' procedural due process challenge is elusive; the captioned claims are quite bare and do not readily inform the Court of the nature of the constitutional deficiency that each seeks to assert.  The First Claim appears to be concerned with the initial padlocking of the King Street buildings.  Plaintiffs claim that the City, by not notifying the owner or the tenants of 12, 14, 16 and 18 King Street as to any charges or actions that were pending before the February 1, 2008 action, rendered constitutionally defective that padlocking and the posted declaration of violations requiring vacation of the premises.  According to Plaintiffs, this lack of notice did not conform with existing "procedures, which upon information and belief, require some notice and opportunity to be heard prior to the padlocking . . . ."  The Second Claim is murkier, but may be understood as challenging a lack of notice regarding the charges as to all of the connected properties rather than just the one designated as the 14 King Street building.  In the general factual allegations, Plaintiffs contend that "buildings located at 12, 16, and 18 were never posted with a notice of charges and the Plaintiffs were never personally served with notice of these charges as to any of the buildings," which may describe the alleged due process issue that impacts

9

the deprivation of property complained of in the Second Claim.  The Court, therefore, reads the Claims as signaling two challenges, first to the February 1, 2008 action when the King Street properties were padlocked following an inspection; and second, to the way in which post-deprivation notice was afforded in referring only to 14 King Street without specifically naming the contiguous buildings.

With respect to the First Claim, the Court finds that Plaintiffs' allegations do not state a due process violation.  The Court assumes the February 1, 2008 padlocking imposed a cognizable deprivation, in that until the Plaintiffs abated the buildings' code violations, the structures remained closed; however, the Defendants' actions, directly following the identification of 142 violations of the City's Building Code, Property Maintenance Code, and State Fire Code, as well as observations about the conditions at the King Street buildings, were reasonable and justified.  See Copy of Feb. 1 Mooney Inspection Document, Dkt. No. 24, Ex. 5; see also Feb. 6 Notice of Violation Letter, Dkt. No. 24, Ex. 6.  On balance, in view of "the importance of the private interest and the length or finality of the deprivation; the likelihood of governmental error; and the magnitude of the governmental interests involved," the Defendants' immediate closure of a dangerous structure, where that status was determined by application of the relevant safety codes, where a post-closure hearing was soon provided for, and where the closure was preliminary pending abatement or a hearing, the lack of notice and a hearing between the identification of the danger and the closing of the buildings did not violate the due process rights of the owners or tenants.  Logan v. Zimmerman Brush Co., 455 U.S. 422, 434 (1982).  "[E]ither the necessity of quick action by the State or the impracticality of providing any meaningful pre-deprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some

time after the initial taking, can satisfy the requirements of procedural due process." Parratt v. Taylor, 451 U.S. 527, 537 (1981) (overruled, in part, on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)). "[W]here there is competent evidence allowing the official to reasonably believe that an emergency does in fact exist, or that affording predeprivation process would be otherwise impractical, the discretionary invocation of an emergency procedure results in a constitutional violation only where such invocation is arbitrary or amounts to an abuse of discretion." Catanzaro v. Weiden, 188 F.3d 56, 63 (1999).

The City of Troy's Building Code and Property Maintenance Code, in § 176-9 addressing the condemnation of dwellings, provides that upon a finding that a structure is dangerous by the Director of Code Enforcement or that person's designee, the structure shall be condemned, and where a structure is found unfit for human occupancy, the structure may be ordered vacated. See Troy Building Code, Dkt. No. 24, Ex. 7. In § 176-10, the Code provides that notice shall be posted with certain information as to the closure and its basis and gives instructions on the method in which notice must be made. Id. Plaintiffs do not explain how the Code was either misapplied or how application of the Code in the matter deprived them of due process. The fact that the King Street properties were padlocked pending abatement or a hearing cannot be deemed unreasonable in light of the extensive number of violations found and the history of incidents at the site, as well as the preliminary nature of the deprivation. See Feb. 12 Notice of Charges and Opportunity for Hearing, Dkt. 24, Ex. 8. (noting five incidents in preceding six months: prostitution and maintenance violations on February 1, 2008; two incidents of public lewdness and criminal possession of a controlled substance on October 12, 2007). "Where a deprivation of property is involved, the aggrieved individual must be given 'an opportunity for a hearing before he is deprived

of any significant property interest, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event.'" Burtnieks v. New York, 716 F.2d 982, 987 (2d Cir. 1983) (quoting Boddie v. Connecticut, 401 U.S. 371, 379 (1971) (emphasis omitted).  Such a governmental interest is manifestly present in the instant case.  Here, a temporary deprivation was imposed which was reasonably justified by the City's clear interest in immediately closing access to a structure found unfit for human habitation.  Defendants have met their initial burden of demonstrating that no genuine issue of material fact exists for trial, namely by showing that their challenged action was proper and appropriate; Plaintiffs, in not opposing Defendants' Motion, have proffered no evidence or reasons to the contrary.  Accordingly, summary judgment in favor of Defendants is granted as to Plaintiffs' First Claim.

Plaintiffs' Second Claim challenges the manner in which notice was given for the March 28, 2008 hearing on Plaintiffs' violations of the Troy Nuisance Ordinance.  That Ordinance provides: "Notice shall be served upon an owner pursuant to Article 3 of the Civil Practice Law and Rules, upon a lessor or lessee pursuant to § 735 of the Real Property Actions and Proceedings Law, and upon a mortgagee by means of certified mail, return receipt requested . . . ."  Troy General Code § 205-22(B).  Plaintiffs assert this posting of notice on 14 King Street was constitutionally inadequate because the Notice did not mention 12, 16, or 18 King Street, even though those properties had also been padlocked by both the Bureau of Code Enforcement and later by the Mayor under the Nuisance Ordinance.  Plaintiffs have also asserted that they never received notice in the mail until they requested such notice from Defense counsel.

This claim fails for several reasons.  The record shows that 12, 14, 16 and 18 King Street are

12

connected buildings, and that both Troy Video and News and Fantasies operated, in part, out of 14 King Street. Alan Fraccola Aff. ¶¶ 14-16. Fourteen King Street was given a combined certificate of occupancy covering the businesses located at these premises. Declaration of Nannette R. Kelleher, Ex. A (Dkt. No. 13, Attach. 2). Moreover, in the hearing officer's written decision, he found that Plaintiffs had been served with the Notice of Charges both personally and by mail, Hearing Officer Decision at 1, and Plaintiffs offer no evidence to support their conclusory allegations to the contrary. It is simply unbelievable, given these facts and the City's inspection and padlocking of the whole premises, that the notice was constitutionally insufficient due to the posted notice's reference to only 14 King Street. The Defendants have met their burden in demonstrating conclusively that the City's posting was reasonable. Summary judgment is, therefore, granted on the Second Claim.

  *b. Third Claim*

  Plaintiffs' Third Claim asserts that enforcement of the City's Nuisance Ordinance, in which points for documented violations may be accumulated and lead to closure of a business, deprived Plaintiffs of their First Amendment right to engage in protected speech. The Plaintiffs also include language alleging that the Ordinance "create[s] a prior restraint and chilling effect upon Plaintiffs exercise of constitutionally protected speech and conduct." The Complaint generally contends that Troy's "statutory scheme" operates to "unconstitutionally remove from the City of Troy, any such activity which might fit within the definition of an adult entertainment business." Compl. at ¶ 65.

  However stated, Plaintiffs' First Amendment claim is without merit. As a general matter, an "individual's right to speech must always be balanced against the state's interest in safety, and its right to regulate conduct that it legitimately considers potentially dangerous," Church of American Knights of the Ku Klux Klan v. Kerik, 356 F.3d 197, 209 (2d Cir. 2004), and, of particular salience

here, "the First Amendment is not implicated by the enforcement of a public health regulation of general application against the physical premises in which respondents happen to sell books . . ." or otherwise engage in commercial adult entertainment activity. Arcara v. Cloud Books, Inc., 478 U.S. 697, 707 (1986). Whether or not an incidental burden has fallen on Plaintiffs' free speech rights through enforcement of the Nuisance Ordinance, the City's actions were taken pursuant to such a general public health regulation; there have been absolutely no facts alleged by Plaintiffs in support of their conclusory allegation that enforcement was merely a pretext to chill First Amendment rights. Acara is squarely on point. In that case, authorities in Erie County, New York sought to close an adult bookstore as a public nuisance because an undercover investigation found that prostitution and other illegal activities were occurring on the premises. 478 U.S. at 698-99. The store's owners challenged the closure, contending, *inter alia*, that the it interfered with their First Amendment right to sell books on the premises. On appeal, the Supreme Court found that the closure did not implicate the First Amendment and that, therefore, the closing order was not subject to First Amendment analysis:

> [W]e have not traditionally subjected every criminal and civil sanction imposed through legal process to "least restrictive means" scrutiny simply because each particular remedy will have some effect on the First Amendment activities of those subject to sanction. Rather, we have subjected such restrictions to scrutiny only where it was conduct with a significant expressive element that drew the legal remedy in the first place . . . , or where a statute based on a nonexpressive activity has the inevitable effect of singling out those engaged in expressive activity.

Id. at 706-07 (internal citations omitted). Nothing in the record distinguishes the instant case from the facts and ruling in Acara; Defendants have demonstrated that no material issue remains for trial; in the absence of any submission to the contrary by Plaintiffs, the Court grants summary judgment

14

in favor of Defendants on the Third Claim.

*c. Fourth Claim*

Finally, Plaintiffs' Fourth Claim raises a promissory estoppel argument on the basis of allegations that attorneys with the City's Corporation Counsel's Office made representations to Plaintiffs' counsel that the charges against Plaintiffs would be deferred or ceased.  In order to state a claim for promissory estoppel in New York, a plaintiff must establish "three elements: 1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance."  Kaye v. Grossman, 202 F.3d 611, 615 (2d Cir. 2000).  It appears from Plaintiffs' Complaint that they do not actually assert the existence of  a clear and unambiguous promise.  The Complaint alleges that Plaintiffs' attorney discussed deferral charges with Corporation Counsel and that Plaintiffs' attorney then sent a letter proposing a resolution. Plaintiffs contend "[Corporation Counsel] did not object to the language in this letter" and that "it was understood by *Plaintiffs and Plaintiffs' counsel* that this resolution was meant to avoid further prosecution."  Compl. at ¶¶ 42-3 (emphasis added).  That Corporate Counsel did not object to a proposal or that the proposal represented a certain understanding held by Plaintiffs' has simply no bearing on whether a promise was made.  Such allegations cannot form the basis of a promissory estoppel claim.  The lone factual allegation that remotely suggests a promise is the Plaintiffs' contention that their attorney was assured by Corporation Counsel after the hearing on the nuisance charges "that it was unimportant and that the prior resolution between the parties remained in effect."  Id. at ¶ 47.

In support of their claim, the only evidence provided by Plaintiffs is correspondence sent by

15

Plaintiffs' counsel to Defense counsel which indicates anything but a clear promise by Defendants to defer the nuisance charges. For example, Plaintiffs' counsel sent a letter to Defense counsel on March 8, 2008 "recommend[ing] as a resolution that [his] client meet with a member of the Troy Police Department to discuss the incidents and to receive advice and training from the Department as to how to keep the premises law abiding and crime free in the future." Brickman Affirm., Ex. 6 (Dkt. 6, Attach. 11). On March 25, 2008, Plaintiffs' counsel sent a letter to Defense counsel stating that "[a]s we discussed my client has met with the Troy Police Department . . . I would propose that nuisance charges be deferred based upon my client's participation and continued cooperation with the local authorities." Brickman Affirm., Ex. 8 (Dkt. 6, Attach. 13). Of course, that Plaintiffs' counsel "recommend[ed]" and "propose[d]" ways to resolve the nuisance charges does nothing whatsoever to establish that Defendants clearly and unambiguously agreed to a resolution of the nuisance charges that would render Plaintiffs' appearance at the hearing unnecessary. Furthermore, Corporation Counsel at the time, with whom Plaintiffs allege the communications occurred that form the basis of their claim, has averred in an affidavit that "[a]t no point . . . did I represent to Mr. Brickman that charges or ahearing would be deferred . . ." and "[a]t no time. . . did I inform Mr. Brickman that neither he nor his client needed to appear at a hearing in conjunction with the nuisance charges . . . ." Dkt. No. 13, Ex. 7 at 2.

      There is no genuine issue of fact remaining as to the promissory estoppel claim. Not only have Plaintiffs failed to allege facts that show a clear and unambiguous promise, but their allegations and submissions support the opposite conclusion -- that no such promise was made. Moreover, Plaintiffs have likewise failed to allege facts or make any showing that they engaged in reasonable reliance based upon the vague and apparently one-sided communications Brickman had

16

in advance of the hearing. On the whole, beyond the single indirect and uninformative sentence in the Complaint contending that Corporation Counsel stated the hearing was not important and a prior understanding was still in effect, an allegation controverted by that attorney's affidavit, the record is bare of anything that could sustain a promissory estoppel claim. The Court, therefore, grants summary judgment in favor of Defendants on the Fourth Claim.

## IV.     CONCLUSION

Accordingly, it is hereby

**ORDERED**, that Defendants' Motion for Summary Judgment (Dkt. No. 24) is **GRANTED**, consistent with this Memorandum-Decision and Order; and it is further

**ORDERED**, that Plaintiffs' Complaint is **DISMISSED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED.**

DATED:     May 25, 2010
           Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge